# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE
## CIVIL ACTION NO. 3:08CV-P667-H

**MARTIN ALBERT GORDON**                                                    **PLAINTIFF**

**v.**

**T. JOYNER** *et al.*                                                      **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff filed this civil rights action under 42 U.S.C. § 1983. The complaint is before the

Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601

(6th Cir. 1997). This case involves 41 defendants and numerous separate causes of action. For

the reasons set forth below, the Court will dismiss most of Plaintiff's claims but will allow a few

to proceed beyond initial screening for further development. The Court will allow Plaintiff's

individual-capacity § 1983 claims against Defendants Joyner, Hornback, and June related to

Plaintiff's allegations that they failed to protect him from an assault by another inmate to

proceed for further development. The Court will also allow Plaintiff's individual-capacity

§ 1983 claim against Defendant McFarland related to an incident when McFarland allegedly

punched Plaintiff in the chest while handcuffed to proceed. Finally, the Court will allow

Plaintiff's state-law claim against Defendant Reves for assault to proceed, as well. All other

claims will be dismissed by separate order for failure to state a claim upon which relief may be

granted.

## I. SUMMARY OF CLAIMS

Plaintiff is a prisoner currently incarcerated at the Marion County Detention Center.

Plaintiff alleges that during his stay at Louisville Metro Department of Corrections he suffered

numerous constitutional violations at the hands of Defendants.[1]  Specifically, Plaintiff claims that Defendants' actions violated his First, Fourth, Fifth, Sixth, Seventh, and Eighth Amendment Rights under the United States Constitution.  Plaintiff has named 41 separate Defendants in his complaint:  (1) T. Joyner, Sgt. of Guards; (2) C. Hornback, Guard; (3) Keith Reves, Work-aide; (4) Jerry Abramson, Mayor; (5) Tom Campbell, Director; (6) K. Sidebottle, Deputy Director; (7) R. Dietz, Major of Guards; (8) L. McKune, Classification Coordinator; (9) Jamie Allen, Classification Coordinator; (10) Steve Flener, Sup. Classification; (11) Sandy Worthington, Grievance Counselor; (12) Rebecca Raspberry, Sup. Classification; (13) Keith English, Counselor; (14) Ms. Boyd, Counselor; (15) Stacey Fitzpatrick, Counselor; (16) Ms. Walker, Counselor; (17) Felicia Welch, Captain of Guards; (18) Mr. Chapman, Captain of Guards; (19) Mr. R. Williams, Captain of Guards; (20) Mr. Hogan, Lieutenant of Guards; (21) Mr. Williams, Lieutenant of Guards; (22) Mr. June, Sergeant of Guards; (23) Mr. Garcia, Sergeant of Guards; (24) Mr. Allen, Sergeant of Guards; (25) Mr. Smith, Doctor of Medical; (26) Mr. Light, Psychiatrist; (27) Ms. Desire, Mental Health Counselor; (28) Ms. Jayne, Commissary Manager; (29) Ms. T., Commissary Clerk; (30) Ms. Keeling, Registered Nurse; (31) Ms. Hill, Medical Nurse; (32) Ms. Pich, Medical Nurse; (33) Ms. Barbie, Medical Nurse; (34) D. Taylor, Guard; (35) J. Bunnell, Guard; (36) McFarland, Guard; (37) E. Fox, Guard; (38) Wiggins, Guard; (39) Kuchenbrod, Guard; (40) John Doe I, Dentist; and (41) Jane Doe I, Dental Assistant. Plaintiff sues all Defendants in both their individual and official capacities.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, or any

---

[1]The Court will address the specifics of Plaintiff's claims in the analysis section of this memorandum.

portion thereof, if the Court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted; alteration in *Twombly*). In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to

3

the improper role of an advocate seeking out the strongest arguments and most successful

strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

### A.  42 U.S.C. § 1983

**1.    All official-capacity claims**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action

against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166

(1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

Plaintiff's official-capacity claims against Defendants are, therefore, actually claims against

Louisville Metro Government.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)

(stating that civil rights suit against county clerk of courts in his official capacity was equivalent

of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct

issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights*,

*Tex.*, 503 U.S. 115, 120 (1992).  The Court will first address the second issue, *i.e.*, whether the

municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v.

City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "[T]he touchstone of 'official policy' is

designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and

thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting

*Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is

a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889

(6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the

city itself and show that the particular injury was incurred because of the execution of that

policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan

v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v.

Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving

force of the constitutional violation' in order to establish the liability of a government body

under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326

(1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S.

397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a municipal

policy or custom in causing his alleged harm. In fact, he cites numerous instances of violation of

departmental policies. Plaintiff's complaint appears to allege isolated occurrences affecting only

him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that

this was anything more than a one-time, isolated event for which the county is not responsible.").

As nothing in the complaint demonstrates that Defendants' actions occurred as a result of a

policy or custom implemented or endorsed by Louisville Metro Government, the complaint fails

to establish a basis of liability against the municipality and fails to state a cognizable § 1983

claim against it. Accordingly, the official-capacity claims against all Defendants will be

dismissed.

2.     **Individual-capacity claims**

   a.     **Eighth Amendment/Fourteenth Amendment**

The Eighth Amendment to the United States Constitution provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend VIII.  The Eighth Amendment "was designed to protect those convicted of crimes" and does not protect pretrial detainees.  *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). It is not entirely clear from the complaint whether Plaintiff was being held as a pretrial detainee or serving a sentence as a convicted prisoner at the time of the alleged violations.  For the purposes of initial review, however, this is largely a distinction without a difference because the Due Process Clause of the Fourteenth Amendment provides pretrial detainees with rights analogous to those under the Eighth Amendment.  *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).  Therefore, the Court will review Plaintiff's claims to determine whether he has properly alleged violations of the Fourteenth Amendment.  Plaintiff makes numerous repetitive allegations.  For the purpose of conducting initial review and to the extent feasible, the Court will attempt to analyze each claim in the order set forth in the complaint.

   1.     **March 1, 2008 assault**

   A.     **Reves**

Plaintiff alleges that he was assaulted by inmate work-aide Keith Reves on March 1, 2008, in Dorm J3-1A of Louisville Metro Department of Corrections.  He was knocked unconscious and two of his upper front teeth were knocked out.  In order to state a claim under § 1983, a plaintiff must allege both a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42  (1988).  Defendant Reves is a fellow inmate. While Plaintiff claims that Reves was "an inmate employed by the Metro Department of

Corrections," inmates who work in a prison are not employees of the prison. *Chambers v. Adams*, No. 99-3849, 2000 U.S. App. LEXIS 24810, at *3 (6th Cir. Sept. 19, 2000). Nor do the facts alleged in the complaint support a determination that Reves was acting on behalf of the State in assaulting Plaintiff.

If the alleged infringement of federal rights is fairly attributable to the state, then private persons may be held to be state actors. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). The Supreme Court has articulated three tests for determining who are state actors. These three tests are: (1) the nexus test or symbiotic relationship test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26 (1961); (2) the public function test, *West v. Atkins*, 487 U.S. at 49-50; *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978); and (3) the state compulsion test, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-39 (1982) (for a discussion of the tests); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (same).

Under the symbiotic relationship or nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). "[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Id.* The public function test requires that the private person exercise powers which are traditionally and exclusively reserved to the state, such as holding elections or eminent domain. *Id.* Finally, "[t]he state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*

7

*v. Huhn*, 960 F.2d at 1335.  More than mere acquiescence or approval by the state in the alleged wrongful actions is necessary.  *Id.*

Plaintiff alleges that Defendant Reves was an "inmate work-aide" but fails to set forth facts that would in any way connect his actions in the alleged assault to the State.  The facts alleged by Plaintiff do not meet any of the tests articulated by the Court which would allow Reves' actions to be fairly attributable to the state.  He was a fellow inmate with no state authority.  Therefore, Reves is not subject to § 1983 liability, and Plaintiff's claim against him under § 1983 will be dismissed.  *Butler v. Jenkins*, 450 F. Supp. 574 (E.D. Tenn. 1978).

### B.      Joyner, Hornback, and June

While not entirely clear from the complaint, it appears that Plaintiff alleges that he had complained about threats to his safety by Reves and others two weeks prior to the assault and had been moved out of Dorm J3-1A by Defendants Joyner, Hornback, and June because of these threats.  However, they returned him to Dorm J3-1A shortly before the assault occurred.

As a general principle, a prison guard has the duty to ensure the "reasonable safety" of inmates.  *See Farmer v. Brennan*, 511 U.S. 825 (1994).  A prison official is liable for failing to protect an inmate from assaults by other inmates when a plaintiff proves that, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

To be certain, "prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another."  *Id.* at 858 (Thomas, J. concurring).  As a result, some level of violence can be unavoidable no matter what precautions are taken, and officers cannot be expected to prevent every assault before it occurs or to stop an assault in progress before injuries are inflicted.  However, in this case, Plaintiff has alleged that

Defendants Joyner, Hornback, and June knew about the threats Reves had made against him. Taking Plaintiff's allegations as true, which the Court is required to do, the guards moved Plaintiff to another dorm because of these threats but then returned him to the dorm where he had received the threats immediately prior to the assault.  As a result, Plaintiff claims that Reves finally followed through on his threats and attacked Plaintiff causing him injury.  Thus, based on the facts alleged the Court will allow this claim to proceed past initial screening for further development as against Defendants Joyner, Hornback, and June.  In permitting this claim to proceed, the Court passes no judgment on the ultimate outcome of the claim.

## 2.      Fabricated incident report

Plaintiff claims Defendants Joyner, Williams, Taylor, and Bunnell fabricated a Notice of Inmate Disciplinary Report following the March 1, 2008 assault.  He alleges that he never received a disciplinary hearing for the fabricated charges and that he had to file several grievances and Open Records Requests for months to receive a black-out copy of the incident report.  Plaintiff does not allege specifically that he was penalized as a result of the incident report but does allege that he was "placed in the (hole)" [sic] following the assault.  Construing the complaint in the light most favorable to Plaintiff, the Court will assume that he was "placed in the hole" as a result of the allegedly fabricated incident report.

In the context of prison disciplinary proceedings, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995).  In *Sandin*, the Supreme Court concluded that a prisoner has no liberty interest in remaining free from administrative segregation because it does not impose an "atypical and significant hardship." *Id.*; *see also Harden-Bey v. Rutter*, 524 F.3d 789, 792-93 (6th Cir. 2008) (noting that while a thirty-day placement in segregation did not implicate a protected liberty

9

interest, there was a question of fact as to whether an "indefinite" placement that had already lasted three years did implicate a protected liberty interest); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (finding that loss of privileges and placement in segregation does not give rise to a protected liberty interest).

Thus, Plaintiff did not have a right to procedural due process prior to being placed in segregation. As such, Plaintiff has not alleged a deprivation of a federal statutory or constitutional right with respect to this claim, and it will be dismissed. Accordingly, Plaintiff's claims against Defendants Joyner, Williams, Taylor, and Bunnell regarding their alleged roles in the incident report will be dismissed for failure to state a claim upon which relief may be granted.

### 3.    Access to records and materials

Plaintiff alleges that Defendants Fitzpatrick, Raspberry, Flener, and Campbell failed to furnish him requested records, reports, photos, and other materials which he claims is a violation of the Open Records Act. Violation of the Open Records Act, a Kentucky statute codified at KRS § 61.870, *et seq.*, does not rise to the level of a constitutional violation and is therefore not a cognizable claim under § 1983. Moreover, a prisoner does not have a constitutional right to view his medical and other records whenever he pleases. The Court does not believe that Defendants' failure to supply the records deprived Plaintiff of meaningful access to the courts. As another court explained in dismissing a similar claim: "In fact, he could have filed his claim, as he has done here, with a short and plain statement of the facts within his personal knowledge, and obtained the medical records for supporting evidence through the discovery process." *Lee v. Wright*, No. 94-CV-012, 1995 U.S. Dist. LEXIS 20187, *4-5 (N.D. Ind. Nov. 8, 1995). As such, the Court will dismiss this claim, as well.

Plaintiff also alleges that was ordered to turn over the uniform shirt that he was wearing on the day he was assaulted by Defendant Reves.  He claims that the shirt had evidence of blood and DNA proving that he had been assaulted and that he intended to keep it because he "was going to file a civil lawsuit against the Department of Corrections and work-aide Keith Reves." However, Plaintiff fails to allege how he was harmed by turning over the uniform shirt.  Indeed, he was not prevented from filing a civil lawsuit.  Accordingly, Plaintiff's claim associated with turning over the uniform shirt will be dismissed for failure to state a claim upon which relief may be granted.

### 4.    Grievances

Plaintiff makes a number of allegations that Defendants failed to follow grievance procedure, ignored his grievances, falsified information on denials of grievances, or refused to allow him to sign for receipt of grievances.  However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure."  *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)).  "The mere denial of a prisoner's grievance states no claim of constitutional dimension."  *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003).  A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request

to receive medical care."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004)

("Section 1983 liability may not be imposed simply because a defendant denied an

administrative grievance or failed to act based upon information contained in a grievance.");

*Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*,

79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute

sufficient personal involvement to state a claim for a constitutional violation.").  Thus, where the

only allegation against a defendant relates to the denial or handling of a grievance, a plaintiff

fails to allege any personal involvement by the defendant in the alleged constitutional violation.

*Id.*

Plaintiff's claims against Defendants Sidebottle, Dietz, Jamie Allen, Boyd, Walker,

Welch, and Keeling concern only their denial or handling of grievances or grievance appeals.

Therefore, the claims against these Defendants will be dismissed.

### 5.    Harassment

Plaintiff alleges that Defendants McFarland, Kuchenbrod, Hogan, Sergeant Allen, Hill,

and Fox participated in a "campaign of racist harassment and official oppression," otherwise

harassed and intimidated him in retaliation for grievances he filed against prison officials, used

abusive language, and threatened his life and safety.  Although verbal abuse by prison officials is

not condoned, the law is clear that even if the allegation of verbal abuse is true, verbal abuse by

itself does not violate the Constitution.  *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987);

*Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th

Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation

under 42 U.S.C. § 1983.").  The Court is required to dismiss Plaintiff's allegations regarding

12

these Defendants' non-physical harassment of Plaintiff for failure to state a claim upon which relief can be granted.

### 6.      March 27, 2008 incident

Plaintiff claims that on March 27, 2008, Defendant McFarland "punched me in the chest while my arms [were] in handcuffs."  While non-physical verbal harassment and abuse do not constitute a constitutional deprivation, the physical act of punching Plaintiff while handcuffed could give rise to a claim under the Fourteenth Amendment.  The Court will allow Plaintiff's claim against Defendant McFarland concerning his allegation that McFarland punched him in the chest while handcuffed to proceed for further development.  In permitting this claim to proceed, the Court passes no judgment on the ultimate outcome of the claim.

### 7.      Denial of personal items and privileges

Plaintiff alleges an occasion when Defendant McFarland denied him clean linens.  He also alleges that on March 20, 2008, Defendant Fox denied him soap, denied him an "hour-out" of his cell, and refused to open his cell for Plaintiff to receive his lunch tray.  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *See Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  "To the extent that [] conditions [of confinement] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Plaintiff alleges isolated occurrences where he was temporarily denied personal items and privileges.  He alleges no facts (such as the length and extent of the denial), however, which would suggest "serious deprivation of basic human needs" or "the wanton and unnecessary infliction of pain,"

13

that constitutes cruel and unusual punishment with respect to these incidents. *Id.* Moreover, while "deliberate and unnecessary withholding of food essential to normal health can violate the Eighth Amendment," *Cunningham v. Jones*, 567 F.2d 653, 656, 660 (6th Cir. 1977), and by analogy the Fourteenth Amendment, Plaintiff makes no such sweeping allegations. He fails to allege that he was denied sufficiently nutritious meals for any appreciable amount of time. *See Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."). For these reasons, the foregoing conditions-of-confinement claims will be dismissed.

### 8. Medical treatment

#### A. Arrival at Louisville Metro Department of Corrections

Plaintiff makes a number of allegations concerning medical treatment he received during his stay at Louisville Metro Department of Corrections. He alleges that when he was processed into the jail on January 31, 2008, he was "questioned by" Defendant Nurse Barbie. Plaintiff informed her that he had been assaulted that morning by two police officers and suffered a concussion, a cut above his right eye, an abrasion on his face, a dislocated shoulder, and cuts to both his knees. Defendant Nurse Barbie informed Plaintiff that he would see the doctor the next day. However, he did not see a doctor until fourteen days later. He also claims that, when he saw Defendant Dr. Smith, Smith failed to properly document or treat his injuries. In addition, he claims that was placed in an overcrowded regular, non-medical dorm where he had to sleep on a mat. When he was transferred to the medical dorm, it was also overcrowded, and he had to sleep on a mat. He claims that he was then transferred out of the medical dorm without seeing Dr. Smith.

14

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. In order for a claim to rise to the level of an Eighth Amendment/Fourteenth Amendment violation, "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837-38. Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the existence of a "sufficiently serious" medical need. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005). The prisoner must also demonstrate that the prison official subjectively possessed "'a sufficiently culpable state of mind in denying medical care.'" *Id*. (quoting *Farmer*, 511 U.S. at 834). "The prison official's state of mind must evince 'deliberateness tantamount to intent to punish.'" *Id*. (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). "'Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.'" *Id*. (quoting *Horn*, 22 F.3d at 660).

Not every claim of inadequate medical treatment states an Eighth Amendment/Fourteenth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Id*. at 107. Nor does negligent medical care constitute a constitutional violation without deliberate indifference resulting in substantial harm. *Id*. at 106; *Johnson v. Leonelli*, No. 99-6220, 2000 U.S. App. LEXIS 25254, 2000 WL 1434767, at *1 (6th Cir. Sept. 19, 2000). Further, the courts make a distinction between cases in which there is a

complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id*.

Furthermore, allegations of denial of medical treatment based on a delay in treatment are to be gauged by examining the effect of the delay in treatment. An "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

Here, Plaintiff alleges that he was seen by a nurse upon entry into Louisville Metro Department of Corrections but that there was a fourteen-day delay before he was seen by a doctor. Therefore, it is clear Plaintiff received medical treatment and simply disputes the adequacy of the treatment. However, he does not allege any detrimental effect of the fourteen-day delay in treatment. Therefore, this Court finds that the alleged delay does not rise to the level of a constitutional violation. Likewise, Plaintiff alleges no detrimental effect or injury from being placed in an overcrowded medical dorm or from sleeping on a mat. Mere discomfort which poses no risk to health and safety does not implicate the Eighth Amendment. *See Hudson v. McMillian*, 503 US. 1, 9 (1992). Accordingly, the Court will dismiss Plaintiff's claims against Defendants Barbie and Smith concerning the medical treatment he received upon entry into Louisville Metro Department of Corrections for failure to state a claim upon which relief may be granted.

16

**B.      Treatment following assault**

As a result of the March 1, 2008 assault, Plaintiff alleges that he was knocked unconscious and two of his upper-front teeth were knocked out his mouth.  Plaintiff states that he was taken to University of Louisville Hospital where he received a CAT scan and a prescription for pain medication and was ordered to be returned to the hospital to see an oral surgeon. Plaintiff alleges that he saw Defendant Dr. Smith two days later, on March 3, 2008, but complains that Dr. Smith did not give him the prescribed pain medication and allowed him to receive only antibiotics.  The following day, on March 4, 2008, he was examined by Defendant Dentist John Doe I, who first recommended Tylenol #3 pain medication, but the dental assistant whispered something in the dentist's ear and ordered Plaintiff Ibuprofen.

Again, Plaintiff does not allege that he was denied medical care following the March 1, 2008 assault.  He disputes the adequacy of the care.  A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation.  *Estelle,* 429 U.S. at 107.  Plaintiff was taken to University of Louisville Hospital following the assault, treated by a doctor in the prison two days later, and treated by a dentist the day after that.  This Court will not second guess the medical judgment of the doctors and medical staff who treated Plaintiff.  *Westlake*, 537 F.2d at 860 n.5.  Accordingly, the claims against Defendants Smith, Dentist John Doe I, and Dental Assistant Jane Doe I are dismissed.

**C.      Treatment for legs and feet**

Plaintiff also claims that Defendant Nurse Hill stopped supplying ointment and bandages that were ordered for his legs and feet by Dr. Smith.  As indicated above, to sustain a cause of action for failure to provide medical treatment, the prisoner must first demonstrate the existence

of a "sufficiently serious" medical need. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir.

2005).  Plaintiff fails to allege the injury to his legs and feet was a sufficiently serious medical

need.  Likewise, Plaintiff fails to allege he suffered any cognizable injury resulting from the

failure of Nurse Hill to resupply Plaintiff with ointment and bandages.  Therefore, the claim

against Nurse Hill concerning ointment and bandages will be dismissed for failure to state a

claim.

### D.      Pill call and requests for medical tests

Plaintiff alleges that Defendant Pich denied Plaintiff his medication on one day.  To

sustain a cause of action for failure to provide medical treatment, the prisoner must first

demonstrate the existence of a "sufficiently serious" medical need.  *Id.*  Again, Plaintiff fails to

allege a sufficiently serious medical need for the medication.  Moreover, Plaintiff fails to allege

the incident caused him to suffer any cognizable injury, and the claim against Nurse Pich will be

dismissed.

Plaintiff also makes broad allegations concerning his requests for blood tests and

neurological tests but does not specify why those tests were needed, what injury resulted from

not undergoing the tests, or what Defendants may be responsible.  Likewise, he makes reference

to being allergic to wool but does not specify what injury resulted from the allergy.  To the

extent Plaintiff is asserting constitutional claims with respect to these allegations, the claims will

be dismissed for failure to state a claim upon which relief may be granted.

### 9.      Psychological treatment

Plaintiff also claims that he requested to see mental health staff on numerous occasions.

He claims that he was interviewed by a mental health worker on February 23, 2008, and was told

that he would not receive psychotropic medications that were prescribed to him while he was serving a previous sentence at Kentucky State Reformatory.  He alleges he was prescribed the medications for "manic-depression, bi-polar and anxiety disorders."  Plaintiff claims that he was told by the mental health worker that he had been without the medication for over a month and had been coping without it.

As indicated above, to sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 104.  "Medical needs encompass treatment for mental illness."  *Davis v. Oakland County*, No. 96-1678, 1998 U.S. App. LEXIS 7172 (6th Cir. April 7, 1998).  However, an inmate must still allege that his mental health problems constitute a serious medical need.  Plaintiff does not allege a complete denial of psychological treatment since he alleges he was interviewed by a mental health worker.  Plaintiff disputes the medical judgment made by the mental health staff.  A difference of opinion between the inmate and the prison medical officials concerning diagnosis or treatment does not constitute a constitutional violation.  *Estelle*, 429 U.S. at 107.  Moreover, he does not allege any injury resulting from Defendants' failure to prescribe him the medication he requested.  Therefore, Plaintiff's claims against Defendants Psychiatrist Light and Mental Health Worker Desire will be dismissed for failure to state a claim upon which relief may be granted.

### 10.    Legal call

Plaintiff alleges that Defendants Fitzpatrick and Flener refused to allow him to make his legal call in the morning, as he requested, and only permitted him to make his legal call in the afternoon.  "In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (noting that "the

19

requirement that an inmate show 'actual injury' derives from the constitutional principle of standing")).  "An inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  "Meaningful access to the courts is the touchstone."  *Id.* (internal citations omitted).  The inmate therefore must go one step further and demonstrate that the alleged denial of access to his attorney hindered his efforts to pursue a legal claim.  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey*, 420 F.3d at 578.  Here, Plaintiff fails to allege that prison officials' failure to allow him to call his attorney at the time of his choosing actually caused him injury or prevented him from meaningfully accessing the court.  As such, he does not have standing to bring such a claim, and the Court must dismiss the claims against Defendants Fitzpatrick and Flener concerning Plaintiff's legal call for failure to state a claim upon which relief may be granted.

### 11.    Indigent pack

Plaintiff also alleges that Defendants Fitzpatrick, Flener, McKune, Jamie Allen, Jayne, and Ms. T failed to provide him with an indigent pack of "stamps, paper, pen, envelopes, etc." during the month of March.  Plaintiff, however, is not constitutionally entitled to receive these items.  Prisoners are constitutionally entitled only to the "basic elements of hygiene."  *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).  Based on Plaintiff's allegations, the Court cannot find that Plaintiff was denied the "basic elements of hygiene," and Plaintiff's claims concerning

20

the denial of the indigent pack will be dismissed for failure to state a claim upon which relief may be granted.

###### b.  <u>First Amendment</u>

Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  The constitutional rights possessed by inmates are "more limited in scope than the constitutional rights held by the individuals in society at large."  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).  Prison inmates retain only those First Amendment rights that are not inconsistent with the inmate's status as prisoner or with legitimate penological objectives of the corrections system.  *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979); *Cruz v. Beto*, 405 U.S. 319, 321 (1972).  Even where claims are made under the First Amendment, the Supreme Court has held that it would not substitute its judgment on difficult and sensitive matters of institutional administration for the decisions of those charged with the formidable task of running prisons.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

###### 1.  **Retaliation**

Plaintiff claims Defendants retaliated against him for filing grievances against jail personnel.  More specifically, Plaintiff alleges that Defendants:  (1) Threw away or broke personal items in his cell; (2) Attempted to harass and intimidate him; (3) Denied him stamps, envelopes, paper, and pens; (4) Failed to file, sign, or date his grievances; (5) Read and discussed his grievances aloud; (6) Refused to allow his legal call at the time chosen by Plaintiff;

(7) Defendant Worthington made injurious and biased comments in front of guards; and

(8) Defendant Flener had Defendant Wiggins cut off the water in the shower while Plaintiff was covered with soap.

Retaliation for the exercise of a constitutional right is itself a violation of the First Amendment actionable under § 1983. *Thaddeus-X*, 175 F.3d at 394. "In a retaliation claim . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being **denied** access to the courts, the prisoner is penalized for actually exercising that right." *Id*. (emphasis in original). A retaliation claim requires three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.*

Plaintiff fails to state a cognizable retaliation claim. The retaliatory conduct alleged by Plaintiff would not deter a person of ordinary firmness from continuing to engage in that conduct. Plaintiff wholly fails to allege that he suffered any "foreseeable consequences that inhibited [his] ability to access the court" or the grievance process. *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005); *Friedmann v. Corr. Corp. of Am.*, 11 Fed. App'x 467, 471 (6th Cir. 2001). Indeed, Plaintiff was not deterred by Defendants' actions. The complaint shows that he continued to file numerous grievances after the alleged retaliatory conduct occurred. Plaintiff has, therefore, failed to allege an adverse action which rises to the level of a cognizable constitutional claim. *See Ingraham,* 430 U.S. at 674 ("There is, of course a de minimus level of

imposition with which the Constitution is not concerned.").  Accordingly, the retaliation claim will be dismissed.

More specifically, Plaintiff's claim that Defendant Flener had Guard Wiggins shut off the water while Plaintiff was in the shower covered with soap, arguably the most troubling of the alleged retaliatory conduct, was a one-time occurrence and does not exceed the "de minimis level of imposition with which the Constitution is not concerned." *Id.*  Again, the incident did not deter Plaintiff from engaging in the grievance process since he continued to file grievances after the incident.

Moreover, with regard to Plaintiff's allegations of three incidents in which Defendant guards entered his cell and kicked, broke, or threw away his personal items in retaliation for grievances he filed, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)).  In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation.  *Parratt,* 451 U.S. at 543-44.  The law of this Circuit is in accord.  For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066.  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See*

*Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).  Thus, any due process challenge with respect to Plaintiff's lost property fails.

Accordingly, Plaintiff's retaliation claim will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Mail

Plaintiff claims his "mail from his Public Defender and Mental Health Provider were also not being given to him."  A total ban on sending and receiving mail by a prison or jail is a violation of First Amendment rights still retained by prisoners.  *See Preston v. Cowan*, 369 F. Supp. 14, 23 (W.D. Ky. 1973), *aff'd in part and vacated in part on other grounds*, 506 F.2d 288 (6th Cir. 1974).  However, Plaintiff does identify who is opening his mail or describe any facts surrounding the alleged violation.  Some factual basis for each claim must be set forth in the pleadings.  *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).  The Court is not required to accept conclusory and unsupported statements.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  As such, this claim does not state a claim upon which relief may be granted.

### c. Fourth Amendment

The Fourth Amendment provides, in part:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.  Plaintiff does not state a viable Fourth Amendment claim. *Hudson,* 468 U.S. at 528 n.8.

In *Hudson*, an inmate brought an action under § 1983 claiming, in part, that the destruction of his personal property during a search of his cell violated his Fourth Amendment

24

right to be free from unreasonable searches and seizures.  In rejecting the inmate's claim, the

Supreme Court stated that a prisoner does not possess "any subjective expectation of privacy . . .

in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable

searches and seizures does not apply within the confines of the prison cell."  *Id*. at 526.  The

same rationale applies to a prisoner's argument that destruction of his property constituted an

unreasonable seizure in violation of the Fourth Amendment.  *Id*. at 528 n.8.  Thus, Plaintiff has

failed to allege a cognizable Fourth Amendment claim against Defendants.

      **d.**    **Fifth Amendment**

      The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise
> infamous crime, unless on a presentment or indictment of a Grand
> Jury, except in cases arising in the land or naval forces, or in the
> Militia, when in actual service in time of War or public danger; nor
> shall any person be subject for the same offense to be twice put in
> jeopardy of life or limb; nor shall be compelled in any criminal
> case to be a witness against himself, nor be deprived of life,
> liberty, or property, without due process of law; nor shall private
> property be taken for public use, without just compensation.

U.S. CONST. amend. V.  Plaintiff fails to explain how the Fifth Amendment applies to his

claims.  Based on the facts as alleged by Plaintiff, the Court does not find that Plaintiff has a

cognizable Fifth Amendment claim against Defendants.  Specifically, the Court notes that to the

extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it

circumscribes only the actions of the federal government.  *See, e.g., Sturgell v. Creasy*, 640 F.2d

843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the

actions of municipal, not federal, officials are at issue, and the Court will dismiss the Fifth

Amendment claims.

25

e. **Sixth Amendment**

The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. amend. VI.  Plaintiff does not explain how Defendants' alleged actions violated his Sixth Amendment rights, and the Court has carefully reviewed Plaintiff's complaint and cannot find any allegations that would establish a violation of the Sixth Amendment. Accordingly, the Court will dismiss Plaintiff's Sixth Amendment claims.

f. **Seventh Amendment**

The Seventh Amendment to the U.S. Constitution states that, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."  The Seventh Amendment, however, "governs proceedings in federal court, but not in state court."  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 432 (1996).  Plaintiff does not explain how Defendants' alleged actions violated his Seventh Amendment rights, and the Court cannot find any allegations that would establish a violation of the Seventh Amendment.  Accordingly, the Court will dismiss Plaintiff's Seventh Amendment claims.

g. **Claim against Tom Campbell, Director**

Plaintiff also sues Tom Campbell, Director of Louisville Metro Department of

Corrections.  He claims Campbell violated Corrections Department policy by never granting him any type of orientation.  Plaintiff also claims Campbell was made aware of his assault and the denial of Plaintiff's request for photographs, memos, and other documents.

Plaintiff's claim that Defendant Campbell did not give him an orientation fails.  A prison orientation is not a right guaranteed under the United State Constitution.  Moreover, Plaintiff does not allege any injury resulting from the failure to receive an orientation.

Moreover, Plaintiff's claims concerning Defendant Campbell's supervisory authority also fail.  The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)).  "[L]iability of supervisory personnel must be based on more than merely the right to control employees."  *Hays*, 668 F.2d at 872.  "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability."  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).  Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee*, 199 F.3d at 300 (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  Here, Plaintiff fails to demonstrate any facts

27

showing that Defendant Campbell encouraged any specific incidents or implicitly authorized, approved, or knowingly acquiesced to any unconstitutional conduct.

Accordingly, the individual-capacity claim against Defendant Campbell must be dismissed.

### h.   Claims against Mayor Jerry Abramson and Sergeant Garcia

Plaintiff identifies Mayor Jerry Abramson and Ms. Garcia as Defendants in the complaint.  However, the complaint makes no reference to them, except in the portion of the complaint in which Defendants are to be listed.  Plaintiff states no facts regarding Mayor Abramson or Sergeant Garcia's personal involvement in the events giving rise to the complaint. While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).  Because Plaintiff has not alleged any facts involving Mayor Abramson or Sergeant Garcia, the complaint fails to state any claims for relief against them.

### B.  State-Law Claim

Plaintiff also alleges a state-law claim against Defendant Reves for assault.  Upon review, the Court will permit this claim to proceed.  The Court passes no judgment on the ultimate outcome of this claim.

28

The Court will enter a separate Scheduling Order governing the development of the claims which will be permitted to proceed and will enter a separate Order dismissing all other claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4412.010