# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE
# CIVIL ACTION NO. 3:08CV-P667-H

MARTIN ALBERT GORDON                                                            PLAINTIFF

v.

T. JOYNER *et al.*                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Martin Albert Gordon filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against 41 defendants. On initial review, the Court allowed claims under the Eighth Amendment to go forward against Defendants T. Joyner, C. Hornback, and June in their individual capacities for failure to protect Plaintiff from an assault by another inmate and against Defendant McFarland in his individual capacity for excessive force. The Court also allowed a state-law assault and battery claim to proceed against Defendant Keith Reves. This matter is before the Court on the motion for summary judgment by Defendants T. Joyner, C. Hornback, June, and McFarland (DN 28). Plaintiff responded (DN 34), and Defendants filed a reply memorandum (DN 35). The motion is ripe for review. For the following reasons, the Court will grant the motion for summary judgment with respect to the claims against Defendants Hornback and McFarland and deny the motion for summary judgment with respect to the claim against Defendants Joyner and June.

## I. BACKGROUND

At the time pertinent to the complaint, Plaintiff was incarcerated at the Louisville Metro Department of Corrections (LMDC). Plaintiff states that he was assaulted by inmate work-aide Keith Reves on March 1, 2008, in Dorm J3-1A of LMDC. Plaintiff states that he was knocked unconscious and two of his upper front teeth were knocked out. Plaintiff alleges that the assault

happened approximately two weeks after guards, Defendants Joyner and Hornback, moved him out of the dorm after Plaintiff received written and verbal threats against his safety and life. Plaintiff also contends that the assault occurred one week after he was moved from another dorm when he informed several guards and Defendant Sergeant June that inmates in Dorm J4-5A had threatened to beat him to death if he did not leave that dorm. After reporting this threat, Plaintiff claims that Defendant June shouted through the dorm that Plaintiff was "checking out of Dorm because it's too hard in here and he is scared."

In a separate incident, Plaintiff claims that, on March 27, 2008, Defendant McFarland came into his cell and threw away personal items as part of a "campaign of racist harassment and official oppresion." Plaintiff further states that, when he attempted to call Lieutenant Hogan, Defendant McFarland punched Plaintiff in the chest while his arms were in handcuffs, told Plaintiff to sit on the bunk, and told Plaintiff that if he got up or said anything while Defendant McFarland was in his cell, McFarland would mace him.

## II. STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the

burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

### III. ANALYSIS

**A.     Joyner, Hornback, and June**

The sole argument by Defendants Joyner, Hornback, and June in favor of summary judgment on Plaintiff's Eighth Amendment failure-to-protect claim is that Plaintiff did not

3

exhaust his administrative remedies with regard to that claim prior to filing suit. With respect to exhaustion, the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

"Because the prison employees bear the burden on exhaustion, **they must do more than point to a lack of evidence in the record**; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable fact finder could find" in favor of the plaintiff on the exhaustion issue. *Schaefer v. Bezy*, 336 F. App'x 558 (7th Cir. 2009) (emphasis added); *Fonseca v. Conrail*, 246 F.3d 585, 590 (6th Cir. 2001) (holding that the party moving for summary judgment on an affirmative defense bears the burden of proof). If the defendant fails to meet its burden of proof, the plaintiff has no obligation to proffer any additional evidence in order to rebut the exhaustion defense. *Fonseca*, 246 F.3d at 590.

Defendants contend that Plaintiff did not exhaust his administrative remedies because he did not file any grievance alleging that any of the named Defendants were responsible for Plaintiff's return to the dorm where he was assaulted or that they were aware that he was returned to the dorm before the assault occurred. Defendants assert that a grievance must identify each defendant actually sued. However, Defendants rely on two cases, *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001) and *Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006), that pre-

4

date the Supreme Court's decision in *Jones v. Bock*, 549 U.S. at 218. In that case, the Supreme Court rejected the Sixth Circuit's prior requirement that inmates identify each defendant sued in a grievance in order to exhaust administrative remedies. *Id.* at 217-218. Instead, the Supreme Court held that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust." *Id.* at 218 (internal quotations omitted). Thus, this Court begins its analysis of the exhaustion issue with the LMDC's administrative procedures. The procedures provide:

1. Filing the Grievance

    a. Grievance forms shall be available to the inmates via the Grievance Counselor or Classification staff upon request.
    b. The grievance shall be in writing and legible. It should be contained within the space on the grievance form with no more than one (1) additional page. . . .
    c. A grievance about a specific incident shall be filed within five (5) working days after the incident occurs.
    d. The grievance shall pertain to one issue. Separate grievances shall be filed for separate issues and unrelated incidents. . . .
    f. The grievance shall include all aspects of the issue that the grievant wants to be addressed including sufficient information to identify staff.
    g. An inmate filing a grievance concerning an identified staff member shall not suggest a specific form of disciplinary action.
    h. The Grievance Counselor may reject a grievance that does not comply with the grievance process requirements. A written explanation shall be provided to the inmate concerning the reason for the rejection.
    I. An inmate may file a grievance to bring a problem to the staff's attention.
    j. An inmate may file a grievance only for him/herself. . . .

2. Resolution Stage

    a. After the grievance has been properly filed, an attempt to resolve the problem shall be made through informal resolution means. This may involve the Grievance Counselor, Department head or facility staff. The resolution stage shall involve inquiries or discussions to attempt to resolve the grievance.

      b.      The Grievance Counselor shall determine on a case-by-case basis whether additional information or conversation with more staff is needed. All attempts at the resolution stage of the grievance shall be documented by the Grievance Counselor.
      c.      Any witnesses involved shall be requested to provide written documentation.
      d.      If possible, affected staff shall gather information, initiate changes where appropriate and respond in writing on the grievance form in the Resolution Response area.
      e.      Response to the grievance shall be within ten (10) working days from receipt of the grievance, unless special circumstances require additional attention. . .
      I.      The inmate shall have five (5) working days after receipt of the resolution response to decide whether to appeal to the next level. . .

3. Appeal to the Director/Designee

      a.      If the grievant is not satisfied with the outcome of the resolution response, he/she may appeal in writing to the Director/Designee within five (5) working days after receipt of the resolution response.
      b.      The Director/Designee shall examine the grievance and make a decision. The Director/Designee's decision shall be in writing on the original grievance form and clearly state the reasons for the decision.
      c.      The Director/Designee shall respond to the grievance within fifteen (15) working days of receipt of the grievance from the Grievance Counselor. It may be requested that the Grievance Counselor indicate the deadline date on the original grievance form. . . .
      e.      The Director/Designee shall forward the grievance with his decisions to the Grievance Counselor, who shall make the appropriate log notations.
      f.      The inmate shall receive the original and be required to sign and date the grievance form. A copy shall be placed in the Master Grievance File.
      g.      The Director/Designee's decision on an appeal is final.

(DN 28, Ex. 7).

Defendants contend that Plaintiff did not exhaust his administrative remedies because he did not file any grievance alleging that any of the named Defendants were responsible for Plaintiff's return to the dorm where he was assaulted or that they were aware that he was

6

returned to the dorm before the assault occurred. However, LMDC's grievance procedure requires that, "[t]he grievance shall include all aspects of the issue that the grievant wants to be addressed including sufficient information to identify staff." Thus, the procedure does not require that a grievance name particular officials, and requiring such a prerequisite for exhaustion is not warranted in this case.

In the complaint, Plaintiff alleges that the "assault happened approximately two weeks after guards, Sgt. Joyner and C. Hornback, moved me out of the dorm after receiving written and verbal threats against my safety and life." Plaintiff cites Exhibit A in support of this statement. In Exhibit A, Grievance Number 3819, Plaintiff states "the Shift-Sergent knew I had prior problems in that dorm and guard Taylor said he was glad my teeth got knocked out and laughed." Plaintiff stated in a subsequent grievance, Grievance Number 4002, that "Sgt. Joiner told me herself that she had moved me out the dorm because of a problem – she knew the threat of my safety and life, Along with the guard who told me that I was []written-out of the dorm when he and Joiner moved me!" In Plaintiff's appeal of Grievance Number 4002, Plaintiff states, "no inmate should be assaulted and covered-up like Sgt. Joiner, Lt. Williams, guard Taylor, and Capt. Welch are trying to do." In addition, in Grievance Number 3785, "Sergent June attempted to walk-by by when I hit the emergency button he came and opened the Door and hollered: 'hey guys inmate Hill is checking-out of the dorm because it's too hard in here and he's scared.'"

Upon review, the Court finds that Plaintiff identified Joyner and June, satisfying LMDC's grievance procedure requiring "sufficient information to identify staff." Therefore, Defendants Joyner and June failed to meet their burden on the exhaustion issue. However, Plaintiff does not identify Defendant Hornback in any grievance. Plaintiff refers to a guard in

7

Grievance Number 4002, but he identifies the guard as Taylor in his appeal of that grievance. Accordingly, the motion for summary judgment with regard to the claims against Defendants Joyner and June will be denied, and the motion for summary judgment with regard to the claims against Defendant Hornback will be granted.

**B.     McFarland**

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 5 U.S. 8, 6-7 (1992). Of course, not "every malevolent touch by a prison guard gives rise to a federal cause of action," *id.* at 9, and "*de minimis* uses of physical force" do not support a constitutional claim "provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 10 (citations and internal quotation marks omitted). Furthermore, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979).

In evaluating an excessive-force claim, the court should consider the extent of injury suffered by an inmate in determining whether the use of force was wanton and unnecessary, although "[t]he absence of serious injury . . . does not end [the inquiry]." *Hudson*, 5 U.S. at 7. Other relevant factors in evaluating an excessive-force claim include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

The Supreme Court recently addressed the issue of *de minimis* injury in *Wilkins v. Officer Gaddy*, – U.S. –, 130 S. Ct. 1175 (2010). As it had in *Hudson*, the Supreme Court rejected the notion that a plaintiff must show "'significant injury'" as "a threshold requirement for stating an excessive force claim." *Id.* at 1178 (quoting *Hudson*, 503 U.S. at 7). However, "[t]his is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." *Id.* (quoting *Hudson*, 503 U.S. at 7). "'The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* (citation and internal quotation marks omitted). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (quoting *Hudson*, 503 U.S. at 9).

Defendant McFarland does not dispute that he struck Plaintiff in the chest while Plaintiff was in handcuffs. McFarland argues that, since Plaintiff did not claim in the complaint that he suffered any injury, Plaintiff's injury could only be described as *de minimis* and, therefore, does not give rise to an excessive-force claim. For his part, in his response to the motion for summary judgment, Plaintiff states that he submitted grievances to the Court "in which the nurse stated that there was redness and swelling where plaintiff was examined After being assaulted by McFarland." Plaintiff also claims that a "medical nurse was called and she observed redness and swelling and proscribed ice and pain-killing medication." Plaintiff claims that this was reported in grievances submitted to the Court. However, Plaintiff did not attach such grievances to his response to the motion for summary judgment and did not identify the date or number of the grievances or identify any medical record to demonstrate that the injury was reported to medical personnel. Further, the Court was not able to identify any such record in previous filings, including approximately 100 pages of grievances attached to the complaint. Defendant

9

McFarland counters that Plaintiff was not treated by any medical personnel following the incident with McFarland and submits an affidavit of a LMDC Medical Records Supervisor to support this. Therefore, the Court finds that Plaintiff has presented no evidence to support his allegations that he incurred an injury.

However, even if Plaintiff had incurred "redness and swelling" and had received medical attention as he claims, the injury would still be no more than a *de minimis* injury. *See Jarriett v. Wilson*, 162 F. App'x 394, 400-01 (6th Cir. 2005) (finding *de minimis* injury where a prisoner complained that his legs were swollen, he suffered pain while standing, and had severe cramps in his thighs when trying to sit); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (finding that prisoner who alleged that he had a bruised ear for three days did not meet § 1997(e) standard).

While the fact that Plaintiff's alleged injuries were only *de minimis* is not conclusive to defeat his excessive-force claim, the Court finds that it demonstrates that Defendant McFarland did not act "maliciously and sadistically to cause harm." *Hudson,* 5 U.S. at 6-7. Moreover, based on Plaintiff's own assertions, the strike to Plaintiff's chest was not repeated, and it was accompanied by McFarland's instructions to sit down on his bunk during the cell search. Plaintiff's assertions confirm this when he states in his response to the motion for summary judgment that McFarland's strike to his chest caused Plaintiff "to drop down on his bunk." Finally, while Plaintiff alleges that McFarland attempted to "mace" him, it is clear from Plaintiff's allegations that he did not in fact do so. Accordingly, the Court finds that Defendant McFarland did not violate the Eighth Amendment, and McFarland's motion for summary judgment will be granted.

## IV. ORDER

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment (DN 28) is **GRANTED in part** and **DENIED in part.** The motion is **GRANTED** with respect to the claims against Defendants Hornback and McFarland and **DENIED** with respect to the claims against Defendants Joyner and June. The Clerk of Court is directed to **terminate** Defendants Hornback and McFarland as parties to the action.

Date:

cc: Plaintiff, *pro se*
 Counsel of record
4412.010